RIVES & MATHER *VS* M'LOSKY & HAGAN.

1. Substantial defects in pleadings, (where a declaration does not contain a *substantial* cause of action, and a material issue be not tried thereon,) are available in error, though not objected to in the Court below.

2. Mere *supposed* errors in the decision or direction of an inferior Court can only be brought to the notice of this Court, by bill of exceptions, signed and sealed in the cause.

3. Points raised in this Court, relative to the testimony in a cause, should appear to have been distinctly presented to the Court below; otherwise, all proof respecting such points will not be presumed to have been embraced in the bill of exceptions: and a presumption will be entertained to sustain the judgment, that sufficient testimony was before the inferior Court, but not spread upon the record.

4. The refusal of a Court to give a charge, to which a party in point of law is entitled, is error, though the Court subsequently, gives a direction which, by inference, may lead to the extent of the charge refused.

5. If a party is not entitled to a charge of the Court, *as requested*, the Court may refuse it *in toto*; and is not bound to modify or reform it for the party.

6. Where the note of a stranger is received by a creditor from his debtor, as collateral security for a debt, the creditor is not bound to notify the debtor, of a proposition of the stranger, to discharge the note, in property, though by a failure to receive such property, the amount of the note is ultimately lost.

This action was assumpsit, by M'Losky & Hogan, against Rives & Mather, in Mobile Circuit Court.

The cause of action was a note of hand, drawn by the defendants in favor of the plaintiffs, (below,) dated the twenty-first day of March, one thousand

eight hundred and twenty-six, and payable at nine-ty days, in the sum of eight hundred and twenty-two dollars, and seventy-nine cents. On the trial, in the Circuit Court, under the pleas of non-assump-sit, payment, accord and satisfaction, and set-off; judgment was given for the plaintiffs there; and by exceptions and writ of error, the defendants remov-ed the cause here.

By the bill of exceptions, it was shown, that on the tenth day of October, one thousand eight hun-dred and twenty-six, defendants had a settlement of all their affairs with the plaintiffs; and that the lat-ter, in settlement of an account, against the defen-dants, then exhibited, received of defendants sundry notes of other persons, then indorsed over to plain-tiffs. That among those notes, was one drawn by one D. H. Burke, in favor of F. Vaughan & Co. for the sum of fourteen hundred and forty-six dollars and fifteen cents, dated May twenty-seven, one thou-sand eight hundred and twenty-five; due at two years, and endorsed " F. Vaughan & Co., per Geor. M. Rives," " Geo. M. Rives," " Thomas Mather."—Defendants also read in testimony, proceeding of the Circuit Court of Dallas, showing judgment and exe-cution against the said Burke, in the name of M'-Losky & Hagan; and the return of original and alias executions, showing the collection of a small amount thereon.

Defendants proved, by D. H. Burke, that on the fourth July, one thousand eight hundred and twenty-seven, the agent of plaintiffs visited him, at his resi-dence, in Dallas County, and demanded payment of

said note : that said Burke informed the said agent, that he could not discharge the note, unless the said agent would take in part payment therefor, a negro woman, and three children, slaves, at the price and sum of twelve hundred dollars : that the agent re-fused this arrangement. Burke also testified, that, had his proposition been acceded to, he could have paid the balance; but that he shortly afterwards disposed of the slaves.

The plaintiffs then proved, that at the time the said settlement was had between the plaintiffs and the defendants, it was distinctly undorstood and agreed, that the notes were to be received as colla-teral security—to be collected by M'Losky & Ha-gan, and applied to the payment of the defendants' account: but, that it never was intended, that the notes were to be received as payment. That two of the notes were retained for greater security, in the event of the collateral not being all paid—they being, together, about equal to Burke's note; and that the notes had all been paid and credited, with the exception of that of Burke.

Plaintiffs also produced a letter, written to George M. Rives, and dated twentieth Debember, one thou-sand eight hundred and twenty-eight, informing him of the non-payment of Burk's note.

The counsel for the defendants moved the Court to instruct the jury—

" First—That the settlement of the tenth Octo-ber, one thousand eight hundred and twenty-six, amounted in law, to an extinguishment of all the notes contained in the account current, as well the two retained, as those given up.

"Secondly—That the defendants, by transferring and indorsing the notes, then handed over, became liable only as indorsers on the notes transferred; and were entitled to notice, as such, of the dishonor of Burke's note.

"Thirdly—That the defendants were discharged from all liability on the notes, sued on, the plaintiffs not having used due diligence, in collecting said note of Burke.

"Fourthly—That if the jury believed the defendants, to have been injured by the neglect of the plaintiffs, to give notice to them, of the proposition made them by Burke, to pay in negroes, so as to have enabled them to take the negroes; that then the plaintiffs had made the debt their own, by such neglect to give such notice; and that the defendants were discharged."

The Court below refused to give the instructions, or any of them, in the words in which they were asked; but charged the jury, that "they should first determine from the evidence before them, whether the notes transferred by the defendants to the plaintiffs, were received in extinguishment of the original debt, or merely as collateral security, for its ultimate payment; and that they might receive positive testimony (of one of the witnesses,) to explain the presumptions, arising from the papers connected with the settlement: that, if the note of Burke, with the others was received—not in extinguishment, but merely as collateral security, then the liability of the defendants upon the original debt, still existed. And that if the plaintiffs had used all due diligence, and proper vigilance, in attempting to col-

lect the amount of Burke's note, it was sufficient: that the defendants, if Burke's note was received as collateral, were entitled to notice of its non-payment by Burke; and that the plaintiffs were not bound to receive the negroes, in part payment."

To all which the defendants excepted.

*Goldthwaite*, for the plaintiffs in error—
*Elliott*, contra.

THORNTON, J.—This action was brought by the defendants in error, against the present plaintiffs, to recover the amount of a promissory note, executed to them, by the said plaintiffs; and the defence relied upon, grew out of a a negotiation or settlement had between the parties, in October, one thousand eight hundred and twenty-six, at which time sundry notes were transferred or handed over to the said defendants, as collateral security, and, among others, a note for one thousand four hundred and forty-six dollars and fifteen cents, executed by one D. H. Burke, to F. Vaughan & Co., due in May, one thousand, eight hundred and twenty-seven.

This note, which is an exhibit to the bill of exceptions taken in the cause, appears to have been indorsed in the following manner:—" F. Vaughan & Co., per Geo. M. Rives," " Geo. M. Rives," " Thomas Mather."

Various points touching the duty devolved, by law, upon the holders of notes or bills, who take them as collateral security to a pre-existing debt, have been argued by the counsel; but, from the view which we take of the case, we do not feel called upon to

decide them, except so far as it appears from the bill of exceptions, that they were brought into contest and decided upon by the Court, whose decision is sought to be reversed by an appeal to this tribunal.

It is not too late, to allege as error, in the appellate Court, a *substantial* defect in the pleadings, even though it were not objected to, in the Court below. Our statute of jeofails only declares, that no cause shall be reversed, &c., after verdict or judgment for any matter on the face of the pleadings, not previously objected to—provided the declaration contains a *substantial* cause of action, and a material issue be tried thereon.    But, for supposed errors, by which a party shall think himself aggrieved, during the progress of the trial, he shall tender his bill of exceptions to the judge, stating the points wherein he is supposed to err in any directions or decisions; which, when signed and sealed, shall become a part of the record of the cause.    The appropriate office of this bill of exceptions, is to exhibt upon the record, all such decisions as may be made, whereby testimony offered and objected to, is admitted or rejected; and such instructions or directions as may be given, with regard to the effect of such testimony.

If testimony offered, were rejected by the Court, it is clear, that without the exception taken, there would be no revisal of such rejection; and so, if it appeared, that testimony were admitted, which might seem to be improper, yet, if no objection were made, by exceptions, taken to its admission, it could not sustain an assignment of error: for, in the language of this Court, in the case of *The Tombecbee*

*Bank and Malone,*[a] the adverse party might have supplied the defect, or waived the matter objected to.

With regard, also, to directions or instructions, asked and refused or given to the jury, as to the effect of testimony, the point of law contained in such instruction, can only be adjudged, as to its relevancy, by the revising tribunal, when so much of the testimony as constitutes its substratum is exhibited to that tribunal.

The result of those reflections is, that every point raised in this Court, for our determination, which relates to the testimony in the cause, should have first been distinctly presented to the Court below; otherwise, in drawing the bill of exceptions, all the proof to which it relates, can not be presumed to have been embrrced in the bill; and the presumption will be indulged to sustain the judgment, that such sufficient testimony was in fact introduced, but not spread upon the record, because no use for it could have been fairly anticipated.

To apply those reflections to the case in hand.—The point on which the chief stress of the argument of the plaintiffs' counsel rested, was, that it was the duty of the defendants in error, to have used all the diligence necessary by the law merchant, to have fixed the liability of F. Vaughan & Co., who were endorsers, as above set forth, of the note transferred to them, as security; that by the use of such diligence alone, could they have retained their right to demand payment of the original debt: and that, as no such diligence appeared upon the record, to have been exerted, there was, of course, no right of recovery in the plaintiffs below.

Now, as no motion for instruction was made, upon that point, and none given, it would not have been professional or proper, to have incumbered the record with any testimony concerning it. The record, as it is, does not exclude the supposition, that proof was introduced to shew, that the indorsement of F. Vaughan & Co. was put there without authority, that it was transferred from them by delivery alone, with an express understanding, that legal diligence was waived, or that they themselves had been instrumental in the supposed laches—in either of which states of the proof, the question of law urged by the counsel, would not have been raised, except perhaps hypothetically, upon the disbelief of the supposed testimony.

Independently, however, of this ground for reversal, which we have thus disposed of, as not properly presented by the record, there were others relied on to which it becomes our duty to attend.

The bill of exceptions presents four particular requests for directions by the Court, all of which, were refused as asked, and afterwards a direction given in *extenso*, by the Court. The refusal to give the particular directions is excepted to, as also is the substituted charge.

I consider the doctrine to be, that if a party, in point of law, is entitled to a particular direction of the Court, and the Court refuses to give it, it is error, although it may, afterwards give a direction, which, by inference and argument, may be pressed to the same extend.[a]

[a] 7 Cranch, 506, 544.

Then, we must consider whether in point of law,

5 s. & p.                    43

the plaintiffs in error were entitled to those particular directions, and, if they were, whether, in the directions subsequently given, the same propositions were so clearly advanced, as not to need the aid of inference and argument, by the jury.

The first charge is understood to be abandoned by the counsel—so nothing need be said in relation to that. The second is only insisted on, *quoad* the last clause, which is in these words, " and were entitled to notice as such, (i. e. as indorsers,) of the dishonor of Burke's note."

According to the principle recognised heretofore, by this Court, as the party was not entitled to the particular charge as asked, the Court might well have refused it in *toto*, not being bound to modify or reform it. But, by reference to the direction given, we discover that the response to this part of the second charge, was an unequivocal affirmance of it.— It is given in these words: " That the defendants, if Burke's note was given as collateral, were entitled to notice of its non-payment."

The propriety of refusing the third charge was conceded, if the word " of," the penultimate in the sentence, should be construed, here, as synonymous with " from "—to which signification we think it is most fairly obnoxious. The sentence reads thus, "That the defendants were discharged from all liability on the note sued on, the plaintiffs not having used due diligence in collecting said note of Burke." But, whether we give to this particle "of," the meaning of a preposition, noting some property, as desciptive of the note, or take it as the synonym of "from," it is not very material, as we consider the charge

asked to have been given by the Court, in its most extended signification.

It is complained of, to be sure, as referring matter of law to the jury; but we do not think that this complaint is available here, as the Court was not requested to say in what the due diligence spoken of, consisted.

If such direction had been asked and refused, or given erroneously, then there might have been just cause of complaint.

The fourth direction sought from the Court, was, that if the jury believed the defendants to have been injured by the failure of the plaintiffs to notify them of a proposition made by Burke, to discharge the note held as collateral security, with negroes, then they were discharged from further liability on the note sued upon. This charge was wholly refused, and the one given in lieu of it, can, by no inference or argument, be pressed to its extent.

Then, according to the rule above laid down, we must determine whether the defendants below were, in point of law, entitled to have had it. We feel no hesitation in deciding that they were not.

If the plaintiffs below were bound to have used all the diligence which the law merchant imposes, in regard to this collateral security, and stood in the character of indorsees alone, which was contended for, this requirement is not a part of their obligation. If they be viewed as *agents*, in regard to the collateral note, good faith would not necessarily have been broken, in the omission to communicate the proposal of the debtor; and, in such case, though a loss may

have finally resulted, it would clearly have been "*damnum absque injuria.*"

It is the opinion of the Court, that there is no error; and that the judgment be affirmed.